### STATEN ISLAND AND NEW YORK FERRY CO. v. The THOMAS HUNT.

[N. Y. Times, June 19, 1862.]

District Court, D. Connecticut.

## Case No. 13,327

### The STATE OF NEW YORK.

[3 Ben. 253.] [1]

District Court, E. D. New York. May, 1869.

COLLISION — AT PIERS — STEAMER COMING IN AND STEAMER GOING OUT — USAGE — RIGHT OF WAY.

1. Where two steamers used the same pier, the State of New York, a large steamer running through the Sound, whose berth was at the side of the pier, and whose hour of departure was 4 p. m., and the Sylvan Stream, a small steamer which made rapid trips up and down the East river, coming in at about 4 p. m., and leaving at 4.15; and it was the usage of the latter on that trip, if she came before the former had started, to stop off in the stream and whistle, and, if the former did not answer or start, to come to the end of the pier and land her passengers before the former started; and, on one occasion, coming according to this usage and whistling, and receiving no answer, she started to come to the pier, and had almost reached it, when the State of New York started to come out, and, though her engine was stopped and backed, it was not done soon enough to prevent a collision, her stem striking the smaller steamer a square blow on the end of her shaft, and being at the time about three feet outside of the end of the pier: *Held*, that the Sylvan Stream, having begun to make her landing before the State of New York had begun to move, was, under the circumstances, entitled to complete it without embarrassment from the latter.

2. She was not bound, under the circumstances, to deviate from her usual mode of making the landing.

3. The collision occurred from negligence on the part of the State of New York, in starting when she did, which happened because the pilot who started her, did so from aft, where he could not see ahead, and then walked forward to his post in the pilot-house, the vessel thus, for a short period, running right into danger, with no one to stop her.

This was a cause of collision instituted by the Harlem & New York Transportation Co., owners of the steamboat Sylvan Stream, against the steamboat State of New York, to recover the damages sustained by the former vessel, in a collision which occurred in the East river, on the afternoon of the 13th day of June, 1867. The Sylvan Stream was a fast steamboat, which made hourly trips between pier 24, in the East river, and Harlem; and the state of New York was a Sound steamer, whose berth was at the upper side of the same pier. The sailing hour of the State of New York was 4 p. m., at which time the Sylvan Stream usually arrived at pier 27, and, when the tide was flood, she, at that hour, landed at

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

the end of the pier, with her head down stream. To avoid embarrassing each other, it had been the practice between these two boats, that, when upon the 4 o'clock trip, the Harlem boat arrived near pier 24 before the State of New York had commenced to move out of her berth, she stopped in the river, a short distance above pier 24, to allow the State of New York to pass out ahead of her, if ready to move; if the State of New York was not ready, then the Harlem boat started again, and made her landing at the end of the pier before the State of New York left her berth. On the day of the collision, the Sylvan Stream arrived before the State of New York had started, and, in accordance with the usage, stopped off pier 27, and, as she claimed, blew her whistle to call the attention of the State of New York to her presence. The State of New York did not begin to move, and, accordingly, the Stream started again to make the landing. But soon after she had begun to move in towards pier 24, and while she was so crossing the bows of the State of New York, the State of New York started her engines. After she had begun to move out, it was, however, discovered by those in charge of the State of New York, that the Stream had already started, whereupon the engine of the State of New York was, at once, stopped and reversed, but, before her headway could be entirely stopped, she struck the Sylvan Stream a square blow upon the end of her starboard shaft—the Sylvan Stream having then arrived at the end of pier 24, and being just about to throw out her plank. The blow was not a heavy one, as the State of New York was barely moving, her stem not being over three feet outside of the end of the pier; but, being upon the shaft, it caused an injury to the engine, for which injury this suit was brought.

Benedict & Benedict, for libellants.

J. W. C. Leveridge and R. H. Huntley, for claimants.

BENEDICT, District Judge. The facts which are undisputed make a clear case in favor of the libellants, as it appears to me. It was a manifest error in the State of New York to commence to move after the Stream had started up, and was reaching in to make her landing, at the end of pier 24. She should have waited until the Stream had reached her landing-place at the pier. The Stream having commenced to make her landing before the State of New York had commenced to move, was, under the circumstances, entitled to complete it without embarrassment from the State of New York, and this she could have accomplished without causing a delay of more than a moment or two.

Much evidence was given upon the hearing, tending to show, on the one side, that the Stream stopped and backed her engine after the State of New York began to move, when she might have kept on, and thus avoided the collision; and, on the other side, to show that she was compelled to stop and back, to avoid running into the pier. But it is clearly shown that she made her landing in the usual way, and, if it be assumed that the evidence shows that, in case she had kept on by her pier, the collision would have been avoided, the fact is not material, in the aspect in which I view the case.

The operation of landing, at the end of the pier, was a single and well-known operation, to be executed with dispatch, in a rapid tide-way. It necessarily involved a crossing of the bows of the State of New York, and a stopping and backing, to bring up properly at the pier, and it required but a short period of time for its completion. Having properly undertaken this manœuvre before the State of New York began to move out, the Stream was fully justified in completing it, upon the assumption that the State of New York would not move out in such a way as to interfere with her.

The collision arose from negligence on the part of the State of New York, in beginning to move when she did; and this happened because the pilot who started her, and who, as I understand the evidence, had the sole control of the engine bells when he started her, stood aft, where he could not see out ahead, and then walked forward a considerable portion of the length of the boat, to his proper post at the pilot-house. The State of New York was thus, for a short period of time, moving directly into danger of collision, with no one to stop her. The period of time was very short, it is true, but it was sufficient to cause the collision, for the evidence shows that three feet would have avoided it.

It must be remembered, also, that this is not the case of two vessels meeting or crossing in their courses at sea, but of one vessel departing from the side of a pier, at the end of which the other was to land. The vessels were passenger boats, running by time-tables, and, certainly, so far as the Sylvan Stream was concerned, compelled to make landings rapidly, as the State of New York knew. The State of New York had the opportunity given her to make her departure first. Not being ready to do so, she was bound to wait quietly till the Sylvan Stream had made her landing; and, having failed to do so, she should be held solely responsible for the collision, even if it were true that the Stream, by abandoning her landing, could have escaped the danger which the fault of the State of New York had thrust upon her. She was not bound to abandon her landing, but had the right to keep on, and rely upon the State of New York's stopping in time to avoid her. The rule here laid down, as applicable to vessels situated as these two vessels were, seems to me necessary, to avoid constant danger and controversy, and one which will work injustice to no one.

The decree must, accordingly, be for the libellant, with a reference to ascertain the amount.